**Margaret ROBEY, et al., Plaintiffs,**

v.

**CHESTER COUNTY, et al., Defendants.**

**Civil Action No. 96–717.**

United States District Court,
E.D. Pennsylvania.

Sept. 12, 1996.

Supplemental Order Granting
Summary Judgment Sept. 12, 1996.

---

John P. Kopesky, Sheller, Ludwig & Badey, Philadelphia, PA, for Plaintiffs.

Frank J. Lavery, Jr., Lavery & Kain, Harrisburg, PA, Robert M. Diorio, Diorio & Falzone, Media, PA, for Defendants.

## ORDER AND MEMORANDUM

KATZ, District Judge.

**AND NOW,** this 12th day of September, 1996, upon consideration of defendants' Motion for Summary Judgment, and the response thereto, it is hereby **ORDERED** that defendants' Motion is **GRANTED** and **DENIED** in part in Count I as follows: defendants' motion is **GRANTED** as to plaintiff's § 1986 claims and as to defendant Wardens Masters and Frame and defendant Snyder and **DENIED** as to defendants Martin, Chester County, and the Chester County Board of Prison Inspectors. Defendants' Motion is **GRANTED** as to the federal claim in Count IV for defendants Frame, Masters, and Snyder, and **DENIED** as to defendant Martin. Defendants' Motion is **GRANTED** as to defendants Frame, Masters, Snyder, Chester County, and the Chester County Board of Prison Inspectors in Counts II and III and the state law claims in Count IV and **DENIED** as to defendant Martin in Counts II and III and the state law claims in Count IV.

### I. *Facts*

Plaintiffs in this case are the mother and minor children of Norman E. Robey, Jr., who committed suicide while incarcerated in Chester County prison. Defendants in this case are Chester County, the Board of Prison Inspectors of Chester County, Warden John Masters, Warden Thomas Frame, Frank Snyder, a prison counselor, and Robyn Martin, a psychologist who treated the decedent.

On or about January 1, 1994, the decedent Norman Robey, Jr., was arrested for homicide and placed in a holding cell in Marcus Hook Police Station, where he attempted suicide and was transferred to Crozer–Chester Medical Center for observation. Complaint ¶¶ 18, 20–21. He was then sent to Delaware County Prison, but officials at Delaware County Prison discovered that the brother of the decedent's alleged victim was a corrections officer at the institution, so he was transferred to Chester County Prison on January 5, 1994. Def. Chester County Mot. for Summ.Judg.Ex.A.

Decedent was on a suicide watch at Chester County Prison from January 5, 1994 until January 10, 1994. Def. Martin Mot. for Summ.Judg.Ex.B. The suicide watch was ended under unclear circumstances, possibly by order of Robyn Martin. He then saw Robyn Martin, a psychologist with EMSA, a private corporation that contracted for all of the medical and mental health care at the prison, on January 20, 1994. *Id.* Robey complained of "bad nerves" and "head ackes" [sic]. *Id.* He denied having any suicidal intent but did request more antidepressant medication. *Id.* Martin increased his medication and promised a regular medical checkup in two weeks. *Id.* This checkup did not occur. In mid-February 1994, Margaret Robey contacted defendant Snyder and asked him to see her son. Snyder said he would see her son as soon as he got a chance. Def. Chester County Mot.Ex.F. Decedent also sent slips to Snyder and requested to speak with him. Pl.Mot.Ex.B. Snyder may have spoken with him about these requests. Pl. Mot.Ex.C; Def. Chester County Mot.Ex.F. On February 26, 1994, at approximately 4:00 p.m., Decedent committed suicide by hanging himself with a bed sheet from a hook in his cell. Def. Chester County Mot. Ex. A (Grantz Aff.).

Plaintiffs assert both federal and state claims. Count I asserts claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1986; Count II is a wrongful death action; Count III is a survival action; and Count IV is a claim for punitive damages. Defendants now move for summary judgment and argue: 1) defendants did not deprive decedent or plaintiffs of any statutory or constitutional rights; 2) defendants did not conspire to deprive plaintiffs of their constitutional rights; 3) a number of the individual defendants are entitled to qualified immunity from suit under both federal and Pennsylvania state law; 4) the defendants' actions did not rise to the level of

deliberate indifference required to establish § 1983 liability; 5) the actions taken by individual defendants do not indicate a policy or practice on the part of Chester County that would result in liability under *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); and 6) plaintiffs' claims for punitive damages cannot stand under § 1983 because the plaintiffs are not entitled to punitive damages against the municipal defendants or the individual defendants in their official capacities, nor can plaintiffs establish that the individual defendants knowingly and maliciously deprived the plaintiffs of their constitutional rights.

## II. *Legal Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. *Tigg Corp. v. Dow Corning Corp.,* 822 F.2d 358, 361 (3d Cir.1987); *Baker v. Lukens Steel Corp.,* 793 F.2d 509, 511 (3d Cir.1986). If the evidence presented by the parties conflicts, the court must accept as true the allegations of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

## III. *Discussion*

### A. *Plaintiffs' § 1986 claim*

■ Under 42 U.S.C. § 1986, plaintiffs must establish that the defendants had knowledge of a conspiracy under 42 U.S.C. § 1985, that the defendants had the power to prevent such a conspiracy, and that the defendants failed to do so. *Rogin v. Bensalem Township,* 616 F.2d 680, 696 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). A conspiracy under 42

U.S.C. § 1985 is a prerequisite to a finding of liability under 42 U.S.C. § 1986. *See Rogin v. Bensalem Township,* 616 F.2d 680, 696 (3d Cir.1980). Leaving aside the question of whether this claim would qualify as an actionable conspiracy under 42 U.S.C. § 1985, plaintiff does not allege any conspiracy nor does the record indicate any knowledge of a conspiracy on the part of the defendants. The § 1986 claim must fail as a result. 42 U.S.C. § 1986 (1994 & Supp.1996); *cf. Jones v. City of Philadelphia,* 491 F.Supp. 284, 288 (E.D.Pa.1980).

### B. *Plaintiffs' § 1983 claims*

#### 1. *Qualified Immunity of Defendants Masters, Frame, and Snyder*

A threshold question in this action is the defense of qualified immunity asserted by Warden John Masters, former Warden Thomas Frame, and Prison Counselor Frank Snyder. Under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), a court determines qualified immunity according to an objective standard: an official's conduct must not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See id.* at 818, 102 S.Ct. at 2738. Only federal constitutional and statutory rights can be considered in evaluating a claim for qualified immunity under *Harlow;* violations of clearly established state law alone are not sufficient. *Davis v. Scherer,* 468 U.S. 183, 193–96, 104 S.Ct. 3012, 3018–20, 82 L.Ed.2d 139 (1984).

The violation of a clearly established right must be such that a reasonable official would understand that his actions violate the right at issue; the official action need not be unlawful, but "in light of pre-existing law, the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citations omitted). As a result, although a defense of qualified immunity is generally a question of law, not fact, for the court to resolve, the question at hand may be unavoidably fact-specific. *Id.* at 641, 107 S.Ct. at 3039–40; *Hunter v. Bryant,* 502 U.S. 224, 227–28, 112

S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991) (per curiam).

It is established law in this circuit that the Fourteenth Amendment imposes a duty not to act with deliberate indifference to a pretrial detainee's serious medical needs and need for personal security, and that if officials knew or should have known of a detainee's vulnerability to suicide, then the Fourteenth Amendment requires those officials to respond to that person's vulnerability with more than reckless or deliberate indifference. *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir.1991) (*Colburn II* ); *Colburn v. Upper Darby Township*, 838 F.2d 663, 668 (3d Cir.1988) (*Colburn I* ).

■ Thus, the question here is whether a reasonable person acting in a manner akin to that of defendants Frame, Masters, and Snyder would have known that he was violating decedent's rights. Plaintiffs allege that the failure of defendants Masters and Frame to institute disciplinary proceedings after decedent's suicide is a form of knowing acquiescence to the allegedly unconstitutional conduct of the jail's employees and approval of that conduct. Defendants' actions, however, do not rise to a level that would require this court to deny them qualified immunity.

■ As for Counselor Snyder, plaintiffs concede that he did not know of decedent's prior suicide attempt until after decedent's death on February 26, 1994. While his not responding to decedent's requests may form the basis of a negligence claim against him, his course of action at the time of the events at issue is also not enough to result in a denial of qualified immunity. *See Colburn*, 946 F.2d at 1025.

### 2. *Actions of Defendant Martin and § 1983 Liability*

A plaintiff in a § 1983 action must establish that the defendant deprived him/her of a right granted by the Constitution or by federal law, and that the defendant acted under color of state law in denying the plaintiff that right. *See Williams v. Borough of West Chester*, 891 F.2d 458, 464 (3d Cir.1989); *Riley v. Jeffes*, 777 F.2d 143 (3d Cir.1985). In the case of a suicide of a pretrial detainee, a custodial officer will be liable under § 1983 if s/he acted with "deliberate indifference" to that detainee's psychological needs. *Williams v. Borough of West Chester*, 891 F.2d 458, 464 (3d Cir.1989); *Colburn I*, 838 F.2d 663, 669 (3d Cir.1988), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989); *Freedman v. City of Allentown*, 853 F.2d 1111, 1115 (3d Cir.1988). As the *Williams* court noted, "deliberate indifference" can take a variety of guises. *See Williams v. Borough of West Chester*, 891 F.2d 458, 464 n. 10 (3d Cir.1989) (declining to draw lines between "reckless indifference," "deliberate indifference," and "reckless disregard," and using "deliberate indifference" as the standard term in such § 1983 cases). In any event, deliberate indifference in a pretrial detainee suicide case must amount to more than an assertion of a negligent failure to protect the detainee from his/her own actions. *See Colburn II*, 946 F.2d 1017, 1024–25 (3d Cir.1991).

A plaintiff must establish three elements in a pretrial detainee suicide case: 1) the detainee had a "particular vulnerability to suicide;" 2) the custodial officer or officers knew or should have known of that vulnerability; and 3) those officers acted with reckless or deliberate indifference to that detainee's vulnerability. *See id.* at 1023–24. Custodial officers have been found to "know" of a detainee's vulnerability to suicide when they have actual knowledge of a suicide threat, previous suicide attempts, or a diagnosis that identifies suicidal tendencies. *Id.* at 1025 n. 1.

■ Martin did know of decedent's prior suicide attempt when he first entered Chester County Prison. Pl. Mot. Ex. A. Decedent was also diagnosed upon entering Chester County prison as suffering from major depression and suffering from impaired insights and judgment, despite denying suicidal intentions. *Id.* Decedent was placed on a suicide watch and evaluated by the staff. Def. Martin Mot. Ex. B. Defendant Martin does not recall whether she ordered that the suicide watch on Mr. Robey be discontinued, yet prison records appear to indicate that the watch was discontinued on her orders. *Id.* The suicide watch was discontinued on Janu-

ary 16, 1994. On February 26, 1994, Mr. Robey hung himself from a hook on his cell. Reasonable minds could conclude that the treating psychologist knew of decedent's suicidal behavior prior to the suicide watch and that she ordered the watch discontinued in a manner that was deliberately indifferent to a serious suicidal threat.

Reasonable jurors could also find that Martin was deliberately indifferent to the serious suicidal problems of decedent when, on January 12, 1994, two days after the suicide watch was removed and over a month before his suicide, she received his medical report form complaining of "bad nerves" and other symptoms and then brushed off his cry for help on January 20, 1994 with a promised further regular medical check in two weeks which never took place. Def. Martin Mot. Ex. B.

### 3. *Liability of Defendants Chester County and the Board of Prison Inspectors of Chester County*

■ Municipal defendants such as Chester County and the Board of Prison Inspectors of Chester County can be held liable under § 1983 only if the plaintiff can establish a policy or custom on the part of the municipality; there is no federal liability on a *respondeat superior* theory. *Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 694, 98 S.Ct. 2018, 2035–36, 2037–38, 56 L.Ed.2d 611 (1978). Plaintiffs have claimed, through an expert report, that Chester County Prison has not followed the minimal practice in the field for personal observation of inmates and that this evidences an unconstitutional policy or practice on the part of Chester County. Pl. Mot. Ex. D, *see also* Pl. Mot. Ex. E.

Proof of the existence of a policy or custom is not enough to establish § 1983 liability. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990). The plaintiff must also show that an official who has the power to make policy is responsible for the affirmative proclamation of a policy or acquiescence is a well-settled custom, and the plaintiff must also demonstrate a causal link between the policy at issue and the deprivation of constitutional rights alleged. *Id.* Here, plaintiff has produced enough facts of record to create a question of material fact with regard to the policy it alleges and the requisite causation required to sustain that claim.

### 5. *Punitive damages under § 1983*

■ A municipality is immune from punitive damages under § 1983. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). As for the individual defendants, they can be held liable in their individual capacities for punitive damages if the individual defendants' conduct can be shown "to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). There is no evidence of record that indicates evil motive or intent on the part of the individual defendants Frame, Masters, Snyder, and Martin nor have plaintiffs demonstrated an issue of reckless or callous indifference on the part of the individual defendants involved, aside from Defendant Martin. As a result, this claim must fail as to defendants Frame, Masters, and Snyder, and plaintiffs may pursue the claim as to defendant Martin.

### C. *Plaintiffs' State Law Claims*

### 1. *Defendants Chester County and the Board of Prison Inspectors of Chester County*

■ Defendants Chester County and the Board of Prison Inspectors of Chester County also raise the defense of sovereign immunity to plaintiffs' state law claims. The Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541 *et seq.* (1982 & Supp.1995) controls the question of immunity over the state law claims. In order for plaintiffs' claims against Chester County and the Board of Prison Inspectors to be viable under the Act, plaintiffs' claim must meet two conditions: the damages must be those which would be recoverable at common law, and the injury must be caused by the negligence of the local agency or its employee while acting within the scope of his or her employment. 42 Pa.C.S.A. § 8542(a)(1–2). In addition, plaintiffs' claim must also fall within one of the eight exceptions listed in § 8542 of the Act: vehicle liability; care,

custody, or control of personal property; real property; trees, traffic controls and street lighting; utility services facilities; street and sidewalk conditions; and care, custody, and control of animals. 42 Pa.C.S.A. § 8542(b); *see also Simmons v. Township of Moon,* 144 Pa.Cmwlth. 198, 601 A.2d 425 (1991). Moreover, the exceptions set forth in § 8542 should be narrowly construed. *Schwartz v. County of Montgomery,* 843 F.Supp. 962, 973–74 (E.D.Pa.1994), *aff'd* 37 F.3d 1488 (3d Cir.1994). As a result, although the record could establish that plaintiffs' damages were caused by defendants' negligence, these acts do not fall within the exceptions set out in § 8542, and the municipal defendants are entitled to immunity under the state law claims.

### 2. *Defendants Frame, Masters, and Snyder*

As for the individual defendants Frame, Masters, and Snyder, the court in its discretion dismisses the state law claims against defendants Frame, Masters and Snyder in Counts II, III, and IV without prejudice for plaintiffs to pursue in state court.

### 3. *Defendant Martin*

The court will exercise supplemental jurisdiction over the state law claims in Counts II, III, and IV against defendant Martin.

### SUPPLEMENTAL ORDER

**AND NOW,** this 12th day of September, 1996, it is **ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** as to the state constitutional claims asserted in Count I of Plaintiffs' complaint.

Plaintiff's complaint asserts a violation of Mr. Robey's civil rights under §§ 8, 9, 11, and 25 of Article I of the Pennsylvania Constitution. These sections of the Pennsylvania Constitution are not implicated in this case. Section 8 involves search and seizure, § 9 addresses the rights of the accused in criminal prosecutions, and § 11 deals with the openness of the courts and suits against the Commonwealth; § 25 reserves the powers of the people. None of the evidence or allega-

tions set forth by plaintiffs relates to these constitutional provisions.